**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Newport News Division**

**DAMONTAZE MONTRELL TILLERY,**

        **Petitioner,**

  **v.**                       **CIVIL ACTION NO. 4:21cv133
[ORIGINAL CRIMINAL NO. 4:19cr31]**

**UNITED STATES OF AMERICA,**

        **Respondent.**

## OPINION AND FINAL ORDER

This case is before the court on Petitioner's <u>pro</u> <u>se</u> "Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody" ("§ 2255 Motion").[1] ECF No. 77. For the reasons stated below, the court **DENIES** the § 2255 Motion.

### I. Background

On August 2, 2019, a jury found Petitioner guilty on all four counts contained in the Superseding Indictment. ECF No. 32. Count One charged Petitioner with Use of a Firearm During a Drug Trafficking Crime Resulting in Death, in violation of 18 U.S.C. § 924(c)(1) and (j). Count Two charged Petitioner with Conspiracy to Possess with Intent to Distribute Ecstasy, in violation of 21

---

[1] "[A] pro se litigant's legal papers are considered filed upon 'delivery to prison authorities, not receipt by the clerk.'" <u>United States v. McNeill</u>, 523 F. App'x 979, 981 (4th Cir. 2013) (quoting <u>Houston v. Lack</u>, 487 U.S. 266, 275 (1988)). Petitioner certified that the § 2255 Motion was placed in the prison mailing system on September 14, 2021. ECF No. 77 at 13.

U.S.C. § 846. Count Three charged Petitioner with Attempted Possession with Intent to Distribute Ecstasy, in violation of 21 U.S.C. §§ 841(a)(1), (b), and 846. Count Four charged Petitioner with Possession of a Firearm as a Convicted Felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

On January 8, 2020, the court sentenced Petitioner to a total term of life plus two hundred forty (240) months. ECF No. 45. This term of imprisonment consists of a term of life on Count One, a term of two hundred forty (240) months on Count Two, a term of two hundred forty (240) months on Count Three, and a term of one hundred twenty (120) months on Count Four. The sentences in Counts Two, Three, and Four are concurrent to each other, and consecutive to Count One.

On January 17, 2020, Petitioner timely noted his appeal of the Judgment. ECF No. 48. On August 17, 2020, the Fourth Circuit affirmed his convictions. ECF No. 61. On November 30, 2020, Petitioner filed for a writ of certiorari with the Supreme Court. ECF No. 64. On January 11, 2021, the Supreme Court denied the writ of certiorari. ECF No. 66.

Petitioner filed the § 2255 Motion pending before the court on October 12, 2021. ECF No. 77. On November 23, 2021, the court received a letter from Petitioner requesting the court consider two additional grounds contained in the letter. ECF 79. The court

2

**GRANTS** Petitioner's request to supplement and will consider the supplementary grounds in addressing Petitioner's § 2255 motion.

On December 14, 2021, the United States filed a Motion to Compel Counsel to Provide an Affidavit, ECF No. 80, and filed a Motion for Extension of Time to File a Response to Petitioner's § 2255 Motion, ECF No. 81. The United States requested the court (1) compel Nicholas R. Hobbs, who represented Petitioner as trial counsel and appellate counsel, to submit an affidavit in response to the ineffective assistance of counsel claims in Petitioner's § 2255 Motion and (2) grant the United States an extension of time to file responsive pleadings. ECF Nos. 80-81. On December 16, 2021, the court granted both motions. ECF No. 82. On January 12, 2022, the United States filed the affidavit of Mr. Hobbs. ECF No. 83. On February 17, 2022, the United States filed its Response in opposition to the § 2255 Motion. ECF No. 87.

On February 22, 2022, Petitioner filed a Motion to Supplement, ECF No. 89,[2] seeking to add an additional ineffective assistance of counsel claim to his § 2255 Motion. See id. On February 24, 2022, the court granted Petitioner's Motion to

---

[2] Petitioner previously filed two identical motions to supplement on January 24, 2022, and February 14, 2022, both of which were filed subject to defect. See ECF Nos. 84-86, 88. Petitioner filed a third motion to supplement on February 22, 2022, with the defect resolved.

Supplement and granted the United States thirty (30) days from the entry of that Order to supplement its Response. ECF No. 90.

On March 3, 2022, Petitioner filed a Traverse replying to Government's Response. ECF No. 91. On March 28, 2022, the United States filed its Second Response as directed by the court. ECF No. 92. On April 18, 2022, Petitioner filed his Second Traverse replying to the United States Second Response. ECF No. 95.

Having been fully briefed, the § 2255 Motion, including its multiple supplements, is now ripe for judicial determination.

## II. Legal Standards

A prisoner may challenge a sentence imposed by a federal court, if (1) the sentence violates the Constitution or laws of the United States; (2) the sentencing court lacked jurisdiction to impose the sentence; (3) the sentence exceeds the statutory maximum; or (4) the sentence "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). A sentence is "otherwise subject to collateral attack," if a petitioner shows that the proceedings suffered from "a fundamental defect which inherently results in a complete miscarriage of justice." United States v. Addonizio, 442 U.S. 178, 185 (1979) (quoting Hill v. United States, 368 U.S. 424, 428 (1962)). A petitioner bears the burden of proving one of those grounds by a preponderance of the evidence. See Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958). If he satisfies that

4

burden, the court may vacate, set aside, or correct the sentence. 28 U.S.C. § 2255(b). However, if the motion, when viewed against the record, shows that the petitioner is entitled to no relief, the court may summarily deny the motion. Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

"[O]nce a defendant has waived or exhausted his appeals, the court is 'entitled to presume he stands fairly and finally convicted.'" Michel v. United States, 849 F. Supp. 2d 649, 653 (W.D. Va. 2012) (quoting United States v. Frady, 456 U.S. 152, 164 (1982)). A petitioner may not use a § 2255 motion to attack collaterally a question or issue already decided on direct appeal. See Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir. 1976). Furthermore, under the doctrine of procedural default, claims asserting trial errors—of fact or law—

> that could have been, but were not raised on direct appeal are barred from review under § 2255, unless the defendant shows [(1)] cause for the default and actual prejudice resulting from such errors or [(2)] demonstrates that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack.

United States v. Shelton, No. 1:04CR45, 2009 WL 90119, at *1 (W.D. Va. Jan. 14, 2009) (emphasis added) (citing United States v. Mikalajunas, 186 F.3d 490, 492-93 (4th Cir. 1999)); Frady, 456 U.S. at 167-68.

If a petitioner alleges cause and prejudice to overcome the procedural default bar, both must be present, and the absence of either is sufficient to deny the petitioner relief. See Frady, 456 U.S. at 168 ("[W]e find it unnecessary to determine whether [the petitioner] has shown cause, because we are confident he suffered no actual prejudice . . . ."). Cause "must turn on something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel." Mikalajunas, 186 F.3d at 493. Prejudice cannot be "merely that the errors at [the] trial created a possibility of prejudice, but that they worked to [the petitioner's] actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Frady, 456 U.S. at 170. If alleging "a miscarriage of justice would result from the refusal of the court to entertain the collateral attack, a movant must show actual innocence by clear and convincing evidence." Mikalajunas, 186 F.3d at 493. "To establish actual innocence, petitioner must demonstrate that 'in light of all the evidence,' 'it is more likely than not that no reasonable juror would have convicted him.'" Bousley v. United States, 523 U.S. 614, 623 (1998) (quoting Schlup v. Delo, 513 U.S. 298, 327-28 (1995)).

Importantly, the procedural default bar does not apply to claims of ineffective assistance of counsel, which are properly

asserted for the first time in a § 2255 motion. <u>See</u> <u>United States</u> <u>v. King</u>, 119 F.3d 290, 295 (4th Cir. 1997). Whether asserting ineffective assistance of counsel as cause for excusing procedural default or as independent grounds for relief, a petitioner must show, by a preponderance of the evidence, that (1) "counsel's performance was deficient," and (2) "the deficient performance prejudiced the defense." <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984); <u>see</u> <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986) (stating the <u>Strickland</u> standard applies when a petitioner alleges ineffective assistance of counsel as cause excusing a procedural default). A petitioner must "satisfy both prongs, and a failure of proof on either prong ends the matter." <u>United States v. Roane</u>, 378 F.3d 382, 404 (4th Cir. 2004). "'[U]nsubstantiated and largely conclusory statements' are insufficient to carry a petitioner's burden as to the two prongs of this test . . . ." <u>Beyle v. United</u> <u>States</u>, 269 F. Supp. 3d 716, 726 (E.D. Va. 2017) (Smith, J.) (quoting <u>Umar v. United States</u>, 161 F. Supp. 3d 366, 375 (E.D. Va. 2015) (Davis, J.)).

A petitioner satisfies the deficient performance prong when he shows that counsel's conduct "fell below an objective standard of reasonableness . . . under prevailing professional norms." <u>Strickland</u>, 466 U.S. at 688. However, "[j]udicial scrutiny of counsel's performance must be highly deferential" because "[i]t is

all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689. "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." Id. To demonstrate prejudice, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. In doing so, a petitioner "must demonstrate that the error worked to his 'actual and substantial disadvantage,' not merely that the error created a 'possibility of prejudice.'" Satcher v. Pruett, 126 F.3d 561, 572 (4th Cir. 1997) (quoting Murray, 477 U.S. at 494).

Due process of law also requires that a defendant receive effective assistance of counsel on direct appeal. Evitts v. Lucey, 469 U.S. 387, 396-97 (1985). As with trial counsel, effectiveness of appellate counsel is evaluated under the two prongs of Strickland. Smith v. Robbins, 528 U.S. 259, 285 (2000). To determine effectiveness of appellate counsel, a court must evaluate whether counsel failed to raise "a particular nonfrivolous issue [that] was clearly stronger than issues that

8

counsel did present" on direct appeal. Smith, 528 U.S. at 288. However, appellate counsel "need not (and should not) raise every nonfrivolous claim." Id.; Jones v. Barnes, 463 U.S. 745, 752-53 (1983) ("A brief that raises every colorable issue runs the risk of burying good arguments."). Accordingly, although "it is still possible to bring a Strickland claim based on counsel's failure to raise a particular claim, . . . it is difficult to demonstrate that counsel was incompetent." Smith, 528 U.S. at 288. As to prejudice, a petitioner must show a reasonable probability that, but for counsel's unprofessional errors, his appeal would have been successful. See id. at 285-86, 288.

### III. Merits of § 2255 Motion

This § 2255 Motion is Petitioner's first under 28 U.S.C. § 2255, and it is timely.[3] The § 2255 Motion and its supplemental materials raise a series of ineffective assistance of counsel claims as well as three independent § 2255 claims: (1) Petitioner's conviction under 18 U.S.C. § 922(g) in Count Four is invalid and

---

[3] Petitioner's conviction became final on January 11, 2021, when his petition for writ of certiorari was denied by the United States Supreme Court. ECF No. 66; see Clay v. United States, 537 U.S. 522, 527 (2003) ("Finality attaches when th[e] [Supreme] Court affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires."). Thus, under 28 U.S.C. § 2255(f)(1), Petitioner had until January 11, 2022, to file a § 2255 motion. He delivered the § 2255 Motion to the prison mailroom on September 14, 2021. See supra note 1; ECF No. 77 at 13.

unconstitutional; (2) he was prosecuted in violation of double jeopardy; and (3) there was insufficient evidence linking him to the firearm to support his conviction under Count One. See ECF Nos. 77, 79, 89, 91, 95.

The court will first address Petitioner's ineffective assistance of counsel claims. The court has interpreted Petitioner's pleadings and supplementary materials as discussing five separate, if often related, claims of ineffective assistance of counsel. See ECF No. 77 at 8; ECF No. 77-5 at 1-3; ECF No. 89 at 1; ECF No. 91 at 2-3, 5-6; ECF No. 95 at 6. The court will then address the three, independent § 2255 claims raised in Petitioner's § 2255 Motion and supplementary materials.

### A. Ineffective Assistance of Counsel

### 1. Failing to Allow Petitioner to Testify

Petitioner alleges that Mr. Hobbs, his counsel throughout his trial and appeal, prevented Petitioner from testifying, "to prove [he] also was the victim." ECF 77-5 at 1. In support of his claim, Petitioner states that counsel misled him into believing he would not be believed and that he was scared of "someone coming to kill me again." Id. at 3.

These claims are directly contradicted by Mr. Hobbs' affidavit and Petitioner's statements to the court during his jury trial. According to Mr. Hobbs, it was his practice to explain to

10

his clients, including Petitioner, that there were three things he would never decide: the decision to plead guilty or not, the decision to have a jury or bench trial, and the decision to testify. ECF No. 83 at 1-2. Counsel advised Petitioner on these issues but told him that he "would not make any one of those three decisions for him." Id. at 2. Counsel, on multiple occasions, advised Petitioner of the potential benefits and risks that come with testifying. See id. Counsel denies telling Petitioner not to testify because he would not be believed. Id. Counsel asserts that he discussed with Petitioner whether he wanted to testify at least twice, once at the jail prior to the jury trial and once after the United States rested its case during a recess in the trial. Id. Finally, counsel asserts that Petitioner never informed counsel of Petitioner's fear that someone would kill him if he were to testify. Id.

The statements made in Mr. Hobbs' affidavit are corroborated by Petitioner's statements to the court during trial. After Petitioner had conferred with his counsel about his defense and whether to testify, the court questioned Petitioner, on the record and under oath, about his decision not to testify. See ECF No. 55 at 454-55. Petitioner told the court that he had discussed whether to testify with counsel. Id. at 454. Petitioner also told the court that he understood that he could testify if he wanted to. Id.

11

Finally, Petitioner told the court that he did not want to testify. Id. at 455.

The overwhelming evidence indicates that Petitioner's decision not to testify was an informed and voluntary decision. There is no evidence to support Petitioner's claims that he was coerced, misled, or blocked from testifying. Petitioner's conclusory and unsubstantiated allegations of ineffective assistance of counsel and malfeasance by Mr. Hobbs fail to show that Petitioner's representation was deficient or fell below the Strickland standard. See Beyle, 269 F. Supp. 3d at 726.

### 2. Failing to File Pre-Trial Motions

Petitioner claims counsel was ineffective for failing to file pre-trial motions to dismiss the Superseding Indictment on the grounds that no firearm was ever recovered, and the United States failed to prove actual or constructive possession. See ECF 77-5 at 2. Petition argues that this insufficiency was obvious and not challenging the sufficiency prejudiced his defense. See ECF No. 89 at 1.

Petitioner fails to offer grounds on which his counsel could have successfully challenged the Superseding Indictment. Counsel does not violate Strickland when he does not raise a frivolous claim. The United States had sufficient facts to support the charges set forth in the Superseding Indictment. The court will

12

not restate all of the facts of the case, but several key facts include that Petitioner admitted to law enforcement that he was at the scene with the intent to obtain ecstasy, a cooperating witness testified that he arranged for the victim to purchase a firearm from Petitioner, and Petitioner provided a photo of a firearm via text message to facilitate the purchase. See ECF No. 87 at 15. Petitioner's claim that the United States failed to provide the firearm in question, alone, would not be enough to reasonably seek dismissal of the Superseding Indictment. Since Mr. Hobbs was under no duty to file a frivolous motion, his decision to not challenge the Superseding Indictment did not fall "below an objective standard of reasonableness . . . under prevailing professional norms." Strickland, 466 U.S. at 688.

Furthermore, since a pre-trial challenge to the Superseding Indictment would have lacked all merit, it would not have changed the outcome of Petitioner's case. Petitioner has not shown to "a reasonable probability" that such a pre-trial motion would have resulted in the dismissal of the Superseding Indictment. Id. at 694. His counsel's choice to not challenge the Superseding Indictment did not prejudice his defense in a way that would have impacted the result of the proceedings. See Satcher, 126 F.3d at 572.

### 3. Failing to Make Relevant Objections

Petitioner claims that his counsel was ineffective in failing to object to the United States' opening statement and failing to object to the United States "leading the witness" on direct examination. ECF 77-5 at 2.

First, Petitioner argues the United States' opening statement contained impermissibly suggestive statements that misled the jury. See ECF 77-5 at 2; ECF No. 53 at 110.[4] In reality, the remarks at issue were factual statements that were not overly suggestive. See ECF No. 87 at 16; ECF No. 53 at 110. The prosecution merely suggested to the jury that the video footage will show the events at the crime scene as they happened. See ECF No. 53 at 110. Second, Petitioner asserts his counsel was ineffective for failing to object to the United States leading government witness Consuela Perry by answering its own question during its direct examination. See ECF No. 77-5 at 2; ECF No. 53 at 122-23. During the direct examination of Ms. Perry by Lisa McKeel, Howard Zlotnick, Ms. McKeel's co-counsel, interrupted the questioning by interjecting

---

[4] Petitioner challenges the following statement from the government's opening: "Now, ladies and gentlemen, these videos are grainy and they're dark so you're not going to see anybody's faces. That makes it difficult, but you do see the events unfold before your eyes." ECF No. 53 at 110 (transcript of trial). The court further notes that the jury was at least twice instructed, in both the preliminary jury instructions and the final charge, that opening statements and closing arguments of attorneys are not evidence.

a statement. ECF No. 53 at 122. Ms. McKeel later repeated the question to the witness, who confirmed Mr. Zlotnick's statement. Id. at 123. The remark at issue in this claim is benign and does not constitute unfair direct examination. The statement was so minor and inconsequential as to have little to no impact on the trial as a whole.[5]

The court can reasonably infer that defense counsel's choice to not object, in these two instances related above, resulted from reasonable decisions based on counsel's sound evaluation of the likelihood of success and the importance, or lack thereof, on any impact on the proceedings of either of these objections. "Judicial scrutiny of counsel's performance must be highly deferential." Strickland, 466 U.S. at 689. To show ineffective assistance of counsel, Petitioner must show that these decisions fell below the objective standard for representation under prevailing professional norms. Id. at 688. Petitioner's conclusory allegations of ineffectiveness do not satisfy this requirement. See Beyle, 269 F. Supp. 3d at 726.

---

[5] The full examination of Ms. Perry begins on page 118 of the transcript and concludes on page 130. ECF No. 53 at 118-130. The statement is on page 122, line 25 of the transcript, where Mr. Zlotnick interjects "[t]hat was Carl house at the time." Id. Moreover, as the transcript reflects, there really was no issue that it was Carl's house. Id.

Petitioner also cannot show that these decisions prejudiced his defense because the failure to object did not work to Petitioner's "actual and substantial disadvantage". See Frady, 456 U.S. at 170. An objection to either of these statements would have been dubious at best. Even if successful, such objections would not have changed the result of the trial.[6] Both the statement in the opening and the statement during Ms. Perry's direct examination were confirmed by the other trial evidence.

Ultimately, Petitioner bears the burden of proving his claim of ineffective assistance of counsel by a preponderance of the evidence. See Miller, 261 F.2d at 547. Petitioner has not shown that the likely remedy to such objections would have altered the result of the proceedings. See Strickland, 466 U.S. at 694. Counsel's representation here was neither deficient nor prejudicial to the defense and cannot show ineffective assistance of counsel under Strickland. See id. at 687, 694.

### 4. Failing to Effectively Cross-Examine the ATF Agent

Petitioner claims his counsel failed to effectively cross-examine the ATF agent, Alex Martinez, on whether the firearm in the photo was real. See ECF 77-5 at 2. At a threshold level this objection makes no sense. On a review of Mr. Martinez's testimony, Mr. Martinez testified as an expert on the interstate

---

[6] See supra notes 4 and 5 and accompanying text.

nexus of firearms and ammunition. ECF No. 55 at 438. In this capacity, he examined three physical exhibits, numbers 18, 19, and 20, which were identified as three cartridge cases for ammunition. Id. at 439. These exhibits had been entered into evidence earlier in trial without objection. ECF No. 54 at 207-08. Additionally, Mr. Martinez discussed his familiarity with a type of firearm. ECF No. 55 at 440-41. No photo of a particular firearm was ever shown, or discussed, during this testimony. To the extent Petitioner claims that his counsel should have asked Mr. Martinez about a picture of a firearm not discussed in the direct, [7] such a line of questioning likely would have been inappropriate and ineffective.[8]

Defense counsel did not cross-examine the ATF agent after the government's direct examination. ECF No. 55 at 441. The court will defer to the judgment of trial counsel when counsel makes reasonable decisions in representing a defendant. See Strickland, 466 U.S. at 689. Counsel's decisions on the nature and extent of a cross-examination get this deference. The court may presume that a counsel's trial tactics are in the best interest of the client, and that unutilized tactics are such because they are without

---

[7] It appears that Petitioner is referring to a picture or photograph of a firearm admitted into evidence, without objection, as part of Exhibit 56, a summary of the phone communications between Petitioner, the victim, and a third party. See ECF No. 54 at 344, 348; ECF No. 87 at 8; infra Section III.B.3 at 33-34.

[8] See infra note 9 and accompanying text.

merit, rather than neglect from counsel. See Hedspeth v. United States, No. 4:16-CR-49-6, 2021 WL 399731, at *4 (E.D. Va. Feb. 4, 2021) (Jackson, J.) (citing Harrington v. Richter, 562 U.S. 86, 109 (2011)). The court finds no fault with defense counsel's decision to not dwell on the agent's testimony on cross-examination, particularly since there was basically nothing in Mr. Martinez's brief testimony to contest.

Moreover, under the second prong of Strickland, Petitioner has not shown "actual and substantial" prejudice here. See Satcher, 126 F.3d at 572. Petitioner has not even shown that there was discussion of a gun in a photo during the testimony of Mr. Martinez. All he was asked about was his familiarity with a type of firearm. Moreover, the line of questioning Petitioner now demands likely would not have been effective or changed the outcome of the case, given the sufficiency of the evidence linking Petitioner to the firearm.[9]  See Strickland, 466 U.S. at 694.

Petitioner has neither shown that his attorney's representation was deficient or fell below any standards of practice, nor that failing to ask questions on cross-examination prejudiced his defense. See id. at 668, 687, 694.

---

[9] See infra Section III.B.3.

18

### 5. Improperly Stipulating to Elements of the Charges

Petitioner claims that his counsel should not have had Petitioner stipulate to "knowing he was a convicted felon." ECF No. 91 at 3.[10] Petitioner calls this admission "disturbing" and evidence of ineffectiveness. See id. Petitioner also argues that these admissions lessened the burden on the government and informed the jury that he was a convicted felon, both of which prejudiced his defense. See id.

Petitioner has not shown that defense counsel provided constitutionally deficient performance by advising him to enter into the stipulation. Trial counsel has the right to tailor his time and attention to what he considers the most promising aspects of his case. See Harrington, 562 U.S. at 109 ("There is a strong presumption that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than sheer neglect."). Defense counsel could have reasonably determined that admitting to this stipulation would preserve defense counsel's credibility on other issues and give him more time to articulate stronger defenses.

---

[10] The stipulation, which was read into the record, stated: "Damontaze Montrell Tillery, was a convicted felon on or about July 26, 2018," and "on or about July 26, 2018, the defendant knew of his felony status and the facts giving rise to his felony status. The defendant has not had his civil rights restored." ECF No. 55 at 441.

Moreover, not stipulating to Petitioner's knowledge of his past convictions would have allowed the government to discuss Petitioner's entire criminal record. "When a defendant does not stipulate the fact of his prior conviction, the Government must prove it because it is an element of the offense." United States v. Rhodes, 32 F.3d 867, 871 (4th Cir. 1994). Therefore, the government could have elicited testimony about Petitioner's multiple felony convictions, including assaulting a law enforcement officer and grand larceny. See ECF No. 47 at 13, 15. The government also would have had to prove Petitioner's knowledge of these felony convictions, which then would have allowed discussion of how much time he spent incarcerated for these offenses and whether he pleaded guilty. Not stipulating to his prior felony convictions, and knowledge thereof, would have been so prejudicial to his defense as to be completely unreasonable. Cf. Old Chief v. United States, 519 U.S. 172, 191 (1997) (holding that the district court abused its discretion in refusing a defendant's offer to stipulate to his status as a felon under 18 U.S.C. § 922(g)(1) because of the highly prejudicial nature of the prior-conviction evidence). Counsel would then be subject to an ineffective assistance of counsel claim that is the inverse of Petitioner's current claim, given Petitioner's criminal history

20

record. See ECF No. 47 ("Presentence Investigation Report" or "PSR") ¶¶ 49-57.

Petitioner has also failed to demonstrate prejudice resulting from the stipulation. Petitioner specifically points to the admissions lessening the burden on the government and informing the jury that he was a convicted felon, as prejudicing his defense. See ECF No. 91 at 3. These allegations of prejudice, alone, do not satisfy the requirement under Strickland to show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694. To succeed on his claim of prejudice Petitioner must show that the stipulations "deprive[d] the defendant of a fair trial, a trial whose result is reliable." Id. at 687. Even if the stipulations were rendered void, a new trial would probably not produce an acquittal, and therefore Petitioner cannot show actual prejudice.

### B. Stand-alone § 2255 Claims

### 1. Petitioner's Conviction Under 18 U.S.C. § 922(g)

Petitioner claims his § 922(g) conviction, as charged in Count Four of the Superseding Indictment, is unconstitutional to "my case only." ECF No. 77 at 4. Petitioner makes two claims challenging the validity of this conviction.

First, Petitioner asserts that the United States failed to prove the elements necessary to uphold his conviction. See ECF No. 77-2 at 1; ECF No. 95 at 2-5. Section 922(g) criminalizes the knowing possession of a firearm or ammunition by a convicted felon. The jury was instructed that in order to convict Petitioner of Count Four they had to find the following elements beyond a reasonable doubt:

> One, the defendant knowingly possessed a firearm and/or ammunition as described in count four of the superseding indictment;
> And two, at the time of the charged act, the defendant had previously been convicted in a court of a crime punishable by imprisonment for a term exceeding one year;
> And three, at the time of the charged act, the defendant knew that he had been convicted of such offense;
> And four, the firearm and/or ammunition had been shipped or transported in interstate or foreign commerce.

ECF No. 55 at 535.

As to elements two and three, Petitioner stipulated to knowing he was a convicted felon and that his rights had not been restored.[11] Thus, he stipulated to both the second and third elements necessary to convict him under Count Four. As to elements one and four, Petitioner argues that the United States never "presented a firearm" to the jury and therefore failed to prove

---

[11] See supra Section III.A.5; see also supra note 10 (detailing the stipulation).

that Petitioner knowingly possessed a firearm that had been shipped or transported in interstate commerce. See ECF No. 77-2 at 1; ECF No. 95 at 4-5. Petitioner also argues that there was no physical evidence, like DNA or fingerprints, connecting him to the ammunition casings found at the crime scene. See ECF No. 77-4 at 1.

In prosecuting the charges against Petitioner, the United States did not need to provide physical evidence of a firearm or ammunition. It was sufficient to provide circumstantial evidence of Petitioner's possession of a firearm that was shipped in interstate commerce. "Circumstantial evidence is not inherently less valuable or less probative than direct evidence." United States v. Williams, 445 F.3d 724, 731 (4th Cir. 2006). "Constructive possession may be proved by demonstrating 'that the defendant exercised, or had the power to exercise, dominion and control over the item.'" United States v. Burgos, 94 F.3d 849, 873 (4th Cir. 1996) (quoting United States v. Rusher, 966 F.2d 868, 878 (4th Cir. 1992)).

The United States presented evidence sufficient for the jury to find beyond a reasonable doubt that Petitioner had violated § 922(g)(1). The text messages presented at trial showed that the victim intended to trade ecstasy in return for Petitioner providing him a firearm. See ECF No. 87 at 8. One of the text messages sent by Petitioner to facilitate the deal had a photo of a firearm in

it. See id. A reasonable juror could conclude, based on the evidence, that Petitioner possessed the firearm in the picture at some point leading up to drug deal. The evidence further supported a finding that Petitioner went to the meeting with the firearm and with ammunition.

Moreover, this challenge to the sufficiency of the evidence is barred because Petitioner already challenged the sufficiency of the evidence on direct appeal. The Fourth Circuit noted that Petitioner made two arguments on appeal, one of which was that "the evidence is insufficient to support his convictions for the firearms charges." ECF No. 60 at 5. The Fourth Circuit affirmed the convictions, finding the evidence presented at trial, though circumstantial, was more than sufficient to support the jury's verdict. Id. at 6. Petitioner cannot use a § 2255 motion to attack collaterally the issue of sufficient evidence already decided on direct appeal. See Boeckenhaupt, 537 F.2d at 1183.

To the extent the issue presented here is a separate claim, Petitioner clearly had the opportunity to bring his current sufficiency claim on appeal. Failing to do so has procedurally barred the claim since a § 2255 petition is not a substitute for failing to bring a claim on appeal. See Michel, 849 F. Supp. 2d at 653.

To overcome this bar, Petitioner must show that (1) "counsel's performance was deficient," and (2) "the deficient performance prejudiced the defense." Strickland, 466 U.S. at 687. Both prongs must be present, and the absence of either is sufficient to deny him relief. See Frady, 456 U.S. at 168. Petitioner's unsubstantiated and conclusory allegations alone cannot satisfy his burden. See Beyle, 269 F. Supp. 3d at 726.

As discussed above, Petitioner had effective assistance of counsel at trial and on appeal.[12] The record indicates that his counsel zealously advocated for his defense on appeal, arguing that there was insufficient evidence to support his firearms convictions and that the district court erred in applying the Sentencing Guidelines. See ECF No. 60 at 2 (affirming Petitioner's conviction and sentencing). Moreover, the choice to not make a particular sufficiency argument does not mean counsel's performance fell "below an objective standard of reasonableness." Strickland, 466 U.S. at 688. The court must be highly deferential to the choices of counsel concerning which arguments to bring to the court's attention. Id. at 689. The court finds counsel's performance and decision making, as to this issue, objectively reasonable. See id. at 688.

---

[12] See supra Section III.A.

In his second challenge, Petitioner claims that his § 922(g) conviction is invalid under Rehaif v. United States, 139 S. Ct. 2191 (2019). ECF No. 79 at 2; ECF No. 91 at 4. The Supreme Court, in Rehaif, held that § 922(g) requires the government to "prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm." 139 S. Ct. at 2200.

This second claim has no merit. Petitioner stipulated to knowing of his felony status on the day of the offense conduct.[13] Rehaif's mandate, that the government must prove the knowledge-of-status element, is irrelevant in Petitioner's case, as the government proved this element via the stipulation. Id.

Furthermore, despite Petitioner's claims, the United States presented evidence sufficient to show that Petitioner "knew he possessed a firearm." ECF No. 91 at 4. The text messages presented at trial showed that Petitioner planned to trade a firearm to the victim. The picture of a firearm in the messages further evidenced his knowing possession of a firearm. A reasonable juror could have convicted Petitioner of knowingly possessing a firearm as a convicted felon based on this evidence. Petitioner's claims challenging the constitutionally of his conviction in Count Four under 18 U.S.C. § 922(g) have no merit.

---

[13] See supra note 10 (detailing the stipulation).

The court also notes that Petitioner's <u>Rehaif</u> claim is procedurally defaulted because he failed to raise it on direct appeal. This procedural default may be excused if Petitioner can show either cause for the default and resulting prejudice or his actual innocence. Cause for the default can be based on ineffective assistance of counsel or the fact that the constitutional claim was so novel that its legal basis was not reasonably available to counsel. <u>See</u> <u>Strickland</u>, 466 U.S. at 687; <u>Reed v. Ross</u>, 468 U.S. 1, 16 (1984). As discussed above, Petitioner had effective assistance of counsel at trial and on appeal.[14] His counsel's advocacy on appeal belies any suggestion of ineffective assistance. The court will defer to the choices of counsel concerning what arguments to bring on appeal. This <u>Rehaif</u> claim is also not a novel claim because <u>Rehaif v. United States</u> was decided on June 21, 2019. Petitioner did not file his appeal until January 17, 2020. ECF No. 48. If his appellate counsel deemed <u>Rehaif</u> applicable, counsel could have brought a challenge under <u>Rehaif</u> at that time. Even without the stipulations, the government would easily prove Petitioner's knowledge of his felon status based on his extensive criminal record. <u>See</u> PSR ¶¶ 49-57.[15] Therefore, Petitioner cannot show actual prejudice or actual innocence.

---

[14] <u>See</u> <u>supra</u> Section III.A.

[15] <u>See</u> <u>supra</u> Section III.A.5.

## 2. Double Jeopardy

Petitioner makes two claims related to the Double Jeopardy Clause. First, he claims that Counts Two and Three of the Superseding Indictment were based on the same conduct, on the same day, with the same drugs, and thus violates Double Jeopardy. See ECF No. 77 at 5; ECF No. 77-3. Second, he asserts that Count One violates Double Jeopardy based upon United States v. Palacios, 982 F.3d 920 (4th Cir. 2020). See ECF No. 79 at 1. These claims are both procedurally defaulted and without merit.

These claims are procedurally defaulted because Petitioner could have raised them during his direct appeal but did not. A § 2255 petition is not a substitute for failing to bring a claim on appeal. See Michel, 849 F. Supp. 2d at 653.

To get around this procedural bar, Petitioner claims that the ineffective assistance of counsel kept him from bringing these claims at trial or on appeal. ECF No. 77 at 7; ECF No. 91 at 5-6. A habeas petitioner can assert ineffective assistance of counsel as cause for excusing procedural default. Murray, 477 U.S. at 488. Petitioner alleges that his lawyer told him not to worry or think about his appeal because he was "in good hands." ECF No. 77 at 7. Petitioner also claims that the existing caselaw strongly indicated that these Double Jeopardy claims had merit and that there was no excuse for failing to bring these claims before the

court. See ECF No. 91 at 5-6 (relying exclusively on United States v. Palacios for the proposition that his claims have merit).

Regarding the merits of his two claims, Petitioner has misinterpreted the limitations established in the Double Jeopardy Clause. The Double Jeopardy Clause provides that no "person [shall] be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. It "does not . . . prohibit the legislature from punishing the same act or course of conduct under different statutes." United States v. Ayala, 601 F.3d 256, 265 (4th Cir. 2010). "Instead, the Double Jeopardy Clause prevents courts from imposing cumulative sentences unless Congress intended to authorize such multiple punishment." Palacios, 982 F.3d at 924 (citing Ayala, 601 F.3d at 265).

Petitioner's first claim argues that he cannot be convicted of both Counts Two and Three because they are based on the same conduct, on the same day, with the same drugs. See ECF No. 77 at 5; ECF No. 77-3. Count Two charged Petitioner with Conspiracy to Possess with Intent to Distribute Ecstasy. Count Three charged Petitioner with Attempting to Possess with Intent to Distribute Ecstasy. To determine whether two crimes constitute the "same offence" for Double Jeopardy purposes, we apply the test from Blockburger v. United States, 284 U.S. 299, 304 (1932): "two crimes

29

are the same unless 'each provision requires proof of a fact which the other does not.'" Palacios, 982 F.3d at 924.

Petitioner's first claim fails because the crime of conspiracy in Count Two is not treated as the same as the crime of attempt in Count Three under the Double Jeopardy Clause. See United States v. Bayer, 331 U.S. 532, 542-43 (1947) (finding that a substantive crime and a conspiracy to commit that crime are not the "same offense" for Double Jeopardy purposes). The crime of conspiracy in Count Two requires proof of an agreement, while the crime of attempt in Count Three requires proof of a step toward the commission of a crime. See ECF No. 87 at 11. These elements are not shared between the charges. These differences are enough to avoid a Double Jeopardy violation under the Blockburger test. See Bayer, 331 U.S. at 542-43.

Petitioner's second claim argues that Count One violates the Double Jeopardy Clause because it requires the jury to convict him of both 18 U.S.C. § 924(c) and (j). See ECF No. 91 at 4. Petitioner cites to the holding in Palacios where the Fourth Circuit held that the Double Jeopardy Clause "prohibits imposition of cumulative punishments for § 924(c) and § 924(j)" based on the same conduct. 982 F.3d at 925. The holding in Palacios does not apply here because in Palacios the petitioner faced two separate charges and two separate sentences, one based on § 924(c) and one

30

based on § 924(j). 982 F.3d at 923. Whereas, in this case, Count One of the Superseding Indictment incorporated both subsections into its charging language. Petitioner, here, was indicted, convicted, and sentenced on a single combined charge for violations of both § 924(c)(1) and (j). Petitioner was not, as he claims, "punished multiple times" for the same conduct. ECF No. 91 at 4. He was punished once under Count One. Therefore, Count One as a single charge does not violate the Double Jeopardy Clause.

Simply put, Petitioner has not shown that, under Strickland, his counsel failed to demonstrate reasonable competency or prejudiced his defense by the decision to omit these two challenges under the Double Jeopardy Clause, and thereby does not excuse Petitioner's failure to raise such issues on direct appeal. Since Petitioner has exhausted his appeals, the court is "entitled to presume he stands fairly and finally convicted." Frady, 456 U.S. at 164. To overcome this presumption, Petitioner must show cause for the default and actual prejudice resulting from such errors. See Mikalajunas, 186 F.3d at 492-93. Cause "must turn on something external to the defense, such as the novelty of the claim." Id. at 493. Defense counsel's choice not to appeal on these related issues is not a cause "external to the defense." The issue of Double Jeopardy is not a novel defense. As discussed above, Petitioner had effective assistance of counsel at trial and on

appeal.[16] Petitioner had an opportunity to argue the issues on appeal and failed to do so. Appellate counsel "need not (and should not) raise every nonfrivolous claim." Smith, 528 U.S. at 288. The court is not in the position to second guess this choice and must give deference to the contemporaneous decision making of counsel. See Strickland, 466 U.S. at 689.

Even if Petitioner could show that his counsel should have challenged his convictions under the Double Jeopardy Clause, his claims would still be procedurally barred because he cannot show these decisions prejudiced his defense. Showing prejudice requires showing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A petitioner must show more than a "possibility of prejudice." Satcher, 126 F.3d at 572. Petitioner has failed to show that the court would have ruled in his favor on the merits had he brought these claims before the court.

These Double Jeopardy claims are procedurally defaulted because Petitioner has failed to show ineffective assistance of counsel, actual prejudice, or any "miscarriage of justice." Mikalajunas, 186 F.3d at 492-93; Frady, 456 U.S. at 167-68. These claims also fail on their merits.

---

[16] See supra Section III.A.

### 3. Insufficient Evidence Linking Petitioner to the Firearm

Petitioner asserts a violation of his Sixth Amendment rights, arguing that there was insufficient physical evidence of a firearm to convict him of using a firearm resulting in death, as charged in Count One. See ECF No. 77-6. This sufficiency challenge makes the same arguments as his sufficiency challenge to Count Four, which the court previously rejected.[17] Petitioner again argues there was "no physical evidence" of a firearm, and therefore the jury could not find him guilty of causing the death of a person through the use of a firearm under 18 U.S.C. § 924(j). Id. at 2.

The United States provided more than enough circumstantial evidence to establish that Petitioner caused the death of the victim using a firearm during and in relation to a drug-trafficking crime. See ECF No. 87 at 8. Petitioner's own admissions place him at the scene of the murder, and he admitted to talking with the victim at the driver's-side door of the vehicle. See id. From there, the United States only needed to show that Petitioner possessed a firearm during this meeting and then used it to kill the victim.

The text messages between Petitioner and the victim, leading up to the meeting, establish that Petitioner agreed to trade his firearm for the victim's narcotics. See ECF No. 87 at 8. These

---

[17] See supra Section III.B.1.

33

messages included a picture of a firearm, with the implication that it would serve as part of the drug deal. See id. This evidence, along with the rest of the trial evidence, provides a sufficient basis for a jury to find that Petitioner brought a firearm to the meeting. If the jury believes that Petitioner did come with the firearm and with the ammunition, there is also sufficient evidence to infer that the firearm and ammunition were used to kill the victim. See id. Petitioner told the police a different version of the events. ECF No. 54 at 391-405 (trial testimony about the police interview). In his retelling, some third party interrupted the drug deal, shooting at Petitioner and killing the victim. See ECF No. 77-6 at 2 (discussing in his petition a story similar to the one told in the police interview). The jury simply did not believe Petitioner's version of the story as told to the police. This credibility judgment is best left to the jury, and not second guessed during a post-conviction review.

Moreover, this challenge to the sufficiency of the physical evidence is either barred as already litigated on appeal or procedurally defaulted for not being raised on appeal. As discussed previously, Petitioner already challenged the sufficiency of the evidence on appeal.[18] Again, § 2255 does not allow a Petitioner to

---

[18] See supra Section III.B.1. at 24.

relitigate an issue already decided on direct appeal. <u>See</u> <u>Boeckenhaupt</u>, 537 F.2d at 1183.

To the extent the present challenge is distinct from the challenge raised on appeal, then the challenge is procedurally defaulted since it was not raised on appeal. Petitioner also cannot show deficient performance or actual prejudice from his counsel failing to bring the claim on appeal. Petitioner's unsubstantiated and conclusory allegations alone have not satisfied his burden to excuse the default. <u>See</u> <u>Beyle</u>, 269 F. Supp. 3d at 726.

As discussed repeatedly, Petitioner had effective assistance of counsel at trial and on appeal.[19] The record indicates that his counsel zealously advocated for his defense on appeal and chose a particular set of reasonable arguments to make on appeal. Counsel's representation did not fall "below an objective standard of reasonableness." <u>Strickland</u>, 466 U.S. at 688. The court finds counsel's performance and decision making objectively reasonable. <u>See</u> <u>id.</u>

Petitioner has also failed to show, under the second prong of <u>Strickland</u>, that he suffered actual prejudice from the decision not to make this particular claim. To demonstrate prejudice, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

---

[19] <u>See</u> <u>supra</u> Section III.A.

would have been different." Id. at 694. Petitioner cannot show prejudice because, even if his counsel had appealed on this issue, his claim that the United Stated needed to provide physical evidence of his use of a firearm would have failed on the merits. The Fourth Circuit found the evidence presented at trial sufficient to sustain his convictions when his case was on direct appeal on a similar challenge to the sufficiency of the evidence. Like the Fourth Circuit did on direct appeal, the court here, on collateral review, finds that the United States provided sufficient evidence to establish that Petitioner caused the death of the victim using a firearm during and in relation to a drug-trafficking crime.[20]

Petitioner has not met his burden to show ineffective assistance of counsel as to this claim and no "miscarriage of justice" has occurred. See Mikalajunas, 186 F.3d at 492-93; Frady, 456 U.S. at 167-68.

### IV. Conclusion

For the foregoing reasons, Petitioner's § 2255 Motion is **DENIED**. Petitioner is **ADVISED** that he may appeal from this Final Order by filing, within sixty (60) days of entry of this Order, a written notice of appeal with the Clerk of the United States District Court, U.S. Courthouse, 2400 West Avenue, Newport News,

---

[20] See supra Section III.B.1.

36

Virginia 23607. The court declines to issue a certificate of appealability for the reasons stated herein.

The Clerk is **DIRECTED** to send a copy of this Opinion and Final Order to Petitioner, his trial and appellate counsel, and the United States Attorney at Newport News.

**IT IS SO ORDERED.**

/s/
Rebecca Beach Smith
Senior United States District Judge

REBECCA BEACH SMITH
SENIOR UNITED STATES DISTRICT JUDGE

August 3 , 2022